70576, 70577, 70579. DOSTER et al. v. CENTRAL OF GEORGIA RAILROAD COMPANY et al. (three cases).
70578. MIMBS v. CENTRAL OF GEORGIA RAILROAD COMPANY et al.
70580, 70581. MURPHY v. CENTRAL OF GEORGIA RAILROAD COMPANY et al. (two cases).
(339 SE2d 619)

BEASLEY, Judge.

This case arose out of a vehicle and train collision which occurred at a grade crossing in Putnam County at about 11:30 p.m. on June 2,

1979. A pickup truck driven by Ray Doster and occupied by five passengers (his then wife and four children) collided with the thirty-second car of a freight train which was proceeding over the crossing at a speed of three to five m.p.h. As a result, three of the children were killed and the two adults and the remaining child were seriously injured.

Suit was brought against two defendants, Central of Georgia Railroad Company, the owner of the railroad tracks, and Georgia Railroad Company, the train owner and operator, alleging that both were negligent in various particulars and their negligence was the cause of the deaths and physical injuries to the plaintiffs.[1]

The defendants answered the complaints and denied the material averments. After lengthy and protracted pre-trial discovery the cases were tried by a jury resulting in a verdict for the defendants as to each of the plaintiffs. Appeals to this court followed. The enumerations of error for the appeals have been combined into seven grounds.

There were no eyewitnesses to the collision. None of the surviving plaintiffs recall the events immediately preceding the collision and no member of the train crew witnessed the actual event. The trainman on the caboose saw a truck lying by the track as the train passed and notified the other members of the crew who called for help. Because of this dearth of direct evidence, both sides relied extensively upon expert opinion testimony and circumstantial evidence in their efforts to establish or negate fault.

1. The motion by appellees to dismiss the appeal is denied. *Brown v. Assoc. Fin. Svcs. Corp.*, 175 Ga. App. 553, 555 (333 SE2d 888) (1985).

2. The trial judge's charge on comparative negligence is assigned as error. The first three sentences of that charge read:

"(1) If you find that the negligence of either or both of the defendants, if any, was less than the negligence of a plaintiff, if any, then in that event that plaintiff could not recover. If you find that either or both of the defendants, if any, was equal to the negligence of the plaintiffs, if any, then in that event, that plaintiff cannot recover. If you find that the negligence of either or both of the defendants, if any, was greater than the negligence of a plaintiff, if any, then in that

---

[1] Two of the minors who were killed, Amanda and Jennifer Doster, were children of Ray Doster and Margaret Mimbs, his then wife. The other two children were offspring of Doster's prior marriage to Brenda Murphy. Thus, the plaintiffs in the six actions which were brought were: Ray Doster for his personal injuries — 70576; Ray Doster and Margaret Mimbs as parents and administrators of the estates of Amanda and Jennifer Doster for their deaths — 70577 and 70579; Margaret Mimbs for her personal injuries — 70578; Brenda Murphy as next friend of Daniel Doster for his personal injuries — 70580; Brenda Murphy as custodial parent of Daniel and Anthony Doster and Administratrix of Anthony Doster's estate for injuries to Daniel Doster and the death of Anthony Doster — 70581.

event that plaintiff could recover, but the amount of recovery would be reduced by the degree of negligence chargeable to that plaintiff."

The plaintiffs contend that a plaintiff would be barred from recovery only if his negligence equalled or exceeded the combined negligence of the two defendants. It is urged that the charge in question failed to include, or refer to, this important principle and was misleading, confusing, incomplete and prejudicial.

We do not reach the merits of this enumeration because, regardless of whether the instruction stated the law correctly or not, the plaintiffs could not have been harmed.

The trial judge charged the jury regarding the general principles of negligence and instructed them that unless they found the defendants or either of them were negligent, their deliberations should cease and they should find for defendants. The charge then included the principle that even if either or both defendants were negligent, unless the jury found such negligence to be the proximate cause of the injuries to the plaintiffs then plaintiffs could not recover and the verdict would be for defendants. The law regarding plaintiffs' negligence or lack of care was charged and the charge on comparative negligence was given. The jury was then instructed on the law of imputable negligence and its possible application to Doster's wife. The court charged specifically that as to the minor child who was injured, the fault of the parent or guardian was not imputable or chargeable to the child.

The jury returned a verdict for the two defendants as against all of the plaintiffs including the minor child and estates of the deceased minor children, all to whom negligence was not attributable. Under the instructions such finding, of necessity, was that the defendants were not negligent or if they were, that their negligence was not the proximate cause of the injury. The jury would have never reached the point of comparing negligence since if they had done so there would have been a verdict for the minor child and the estates. This situation is analogous to the maxim that where a jury finds for defendants, errors in an instruction on damages are harmless. See *Black v. Aultman*, 120 Ga. App. 826, 829 (6) (172 SE2d 826) (1969); *Fulton Nat. Bank v. Marshall*, 245 Ga. 745, 747 (267 SE2d 225) (1980). The jury verdict reveals the instruction complained of could not have affected the outcome since the jury did not reach a point at which it would have been applied. In order to be reversible, error must be harmful, and thus this ground is without merit. *Thompson v. Crouch Contracting Co.*, 164 Ga. App. 532, 533 (2) (297 SE2d 524) (1982); *Fulton Nat. Bank v. Marshall*, 245 Ga. 745, 747, supra.

3. One of the major issues concerned whether the defendants were negligent in failing to provide warnings and illumination at the crossing site or on the train. The plaintiffs argued that the dark night,

the dark train and the dark background combined to prevent Ray Doster, the driver of the pickup, from being able to see the train until it was too late. They contended that because of the condition of the crossing it was incumbent upon the defendants to provide a better warning system than was actually provided, i.e., that instead of merely a crossing sign, "gates and flashers" should have been present.

As recited in the amended motion for new trial by plaintiffs "[t]he parties had stipulated before trial that neither side would mention the subsequent remedial measures made at the collision site by the defendants." The exact terms of the stipulation are not concretely set forth in the record and transcript. However, the stipulation is constantly referred to during the course of the trial and apparently was understood by the parties and furnished the basis of the trial court's ruling on several occasions. Moreover, the record contains two orders sustaining defendant Georgia Railroad's motions in limine. The first order upheld the motion to exclude any evidence by the plaintiffs regarding the absence of reflectorized material on the train cars. The second order prohibited both defendants or plaintiffs from offering either evidence or argument concerning subsequent alteration of the railroad crossing which was the collision scene.

Enumerations of error two through six involve the exclusion of evidence or testimony which related either directly or indirectly to remedial measures involving the crossing. As a general rule, evidence of subsequent repairs following an injury is not admissible in a negligence trial since the usual purpose of such evidence is to show that defendant recognizes and admits his negligence. *Chastain v. Fuqua Indus.*, 156 Ga. App. 719, 722 (3) (275 SE2d 679) (1980). The reason for excluding such evidence lies on sound public policy "that men should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrong-doers." *Georgia Southern &c. R. Co. v. Cartledge*, 116 Ga. 164, 168 (1) (42 SE 405) (1902).

Nevertheless, while evidence of subsequent repairs or changes is not admissible to prove defendant was negligent in not having done something prior to the occurrence, evidence of subsequent remedial measures may be offered and admitted for certain other purposes. See *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657) (1983) where such evidence was admissible to rebut evidence that other buildings similarly constructed had not burned by showing that changes had been made. Thus evidence of a change to show that conditions were not the same as at the time of the original incident might ordinarily have been admitted provided the jury was properly instructed as to the limited purpose for which it was received. *Brooks v. Cellin Mfg. Co.*, supra at 397; *Stuckey's Carriage Inn v. Phillips*, 122 Ga. App. 681, 687 (1) (178 SE2d 543) (1970).

However, insofar as the record reveals in this case, there was a stipulation that forbade the introduction of evidence of this nature without provision for its purpose. Without having sought to set aside or amend or modify the stipulation and the order sustaining the defendant's motion in limine, plaintiffs were bound by their stipulation that such was inadmissible for any purpose.

With this background, we now consider the individual enumerations.

4. It is contended that the refusal to permit cross-examination of defendant's expert witness regarding two documents was error. At the time the witness was asked about one document he stated that he had not seen the document before. Outside the presence of the jury plaintiffs' counsel stated that he was offering to prove through the railroad company's own man that his recommendation was forwarded, to whom it was forwarded, and that recommendation was made after the accident to install gates and flashers at the crossing based on examination of the crossing. The trial court correctly forestalled further inquiry because it violated the stipulation.

Moreover, from counsel's statement it appears that what was sought to be proved were recommendations made by someone who was not a witness in the case and by examination of a witness who expressly stated he was not familiar with such report containing the purported recommendations. Thus, no proper foundation was laid for its introduction or questioning of this witness about it.

5. Did the trial court err by permitting a witness to testify, over objection, as to an experiment he conducted at the collision site? Brown, who was a witness for the plaintiffs, was the trooper who investigated the original collision. He was asked by defendants to participate in an experiment shortly before the trial concerning how far in advance one could see the train at the scene using the headlights of a pickup truck, that is, what was the train's visibility as a train. In brief, the objection to his testimony on cross-examination was that the conditions were insufficiently similar.

It is true that there were obvious differences in conditions at the time of the experiment and the conditions at the time when the truck and train collided. However, the trial judge permitted the testimony subject to instructions limiting its purpose and plaintiffs were permitted on redirect to show changes which had occurred at the scene, such as the fact that the background of trees had thinned and the vegetation was not as heavy. It was further brought out that there was now white paint on the road. The trooper testified that there was no illumination other than the truck headlights when the experiment was conducted, the same type truck was driven, the railroad car was the same type but was actually stopped, it was nighttime and dark, the roadway was still asphalt and angled the same, there were trees in the

area, and he used bright headlights as he approached the crossing.

It is a recognized rule that where something is used in comparison with another to illustrate a condition or point that it is necessary that such conditions be substantially similar. *Sammons v. Webb*, 86 Ga. App. 382, 388 (6) (71 SE2d 832) (1952). It is within the trial court's discretion to determine whether the testimony shows the experiment was made under conditions which fairly illustrate the point in issue. *Atlanta & West Point R. Co. v. Hudson*, 2 Ga. App. 352, 354 (1) (58 SE 500) (1907). "The facts need not be exactly or in every particular similar; if they are sufficiently similar to accomplish the purpose of assisting the jury to intelligently consider the issue of fact presented in regard to the special point in controversy, the evidence is admissible." *Miller v. State*, 53 Ga. App. 275, 276 (185 SE 372) (1936). See *Harris v. Collins*, 145 Ga. App. 827, 828 (2) (245 SE2d 13) (1978). The law recognizes that reenactment can rarely if ever be exactly identical but that if such be sufficiently similar, it will aid the factfinder to determine the truth of the original incident.

When coupled with the limiting instructions of the court, it was not an abuse of discretion to permit the testimony as to the experiment. See *Delk v. Sellers*, 149 Ga. App. 439, 444 (9) (254 SE2d 446) (1979); *Meadows v. Oates*, 156 Ga. App. 242, 244 (3) (274 SE2d 634) (1980). Even without the jury's consideration of the physical changes made by defendants at the location, in deference to the stipulation, the conditions were sufficiently similar to give the experiment probative value and leave to the jury the extent of its quantity and quality.

Furthermore, testimony on the same subject was given by another witness, Winchester, to which no objection was interposed. The admission of evidence over objection, even if erroneous, is not reversible error where substantially the same evidence is admitted without objection. *Eiberger v. Martel Electronic Sales*, 125 Ga. App. 253, 255 (6) (187 SE2d 327) (1972).

6. Plaintiffs contend the court erred in failing to sustain the motion to declare the door open in rebuttal to questions concerning dissimilarities due to changes made in the railroad crossing and environs, comparing it and conditions at the time and date of the simulation with the scene at the time and date of the collision. The motion was made as an alternative to excluding testimony as to the simulation.

This enumeration concerns Trooper Brown and Winchester, two witnesses who described the simulation with respect to the truck lights and the distance one would see at the impact area. It is contended the court erred in denying plaintiffs' motion to permit questioning as to all the differences at the scene from the time of the collision until the time the experiment was conducted.

In fact, the trial court did not exclude evidence as to changes at

the scene since plaintiffs were permitted to ask questions about the vegetation, trees in the background, the presence of the moon, the weather conditions and about sources of illumination other than the headlights. The trial judge in making his ruling noted that the witness Brown was called originally by the plaintiff and then considered the ruling in the context that the plaintiffs were not surprised by the evidence, yet had made no previous effort to modify or suspend the stipulation about remedial measures. As we construe it, his ruling therefore did not bar evidence of change but did not permit questions about remedial measures as prohibited by the stipulation. The only limitation on the plaintiffs' examination of the trooper, with respect to the experiment, was that it not violate the stipulation. Plaintiffs could have discovered in preparing for trial that the investigating officer, their witness, had conducted the purported simulation and that some remedial-type measures were in place when he did so. Yet they did not arrange to limit the effect or application of their stipulation and did not object on this ground when their witness was asked on cross-examination to describe the experiment. Instead, they tried to avoid the stipulation when they examined him about the experiment. The court cannot be faulted for assuring its enforcement. Under such circumstances, it was not error to deny plaintiffs' alternative motion.

7. It is urged the trial court erred in excluding opinion testimony by two witnesses as to the safety of the crossing on the fatal night in question. This ground concerns the proposed testimony of Keuper and Holmes. At the time the objection was made there was no clear showing as to what their testimony would be. The defendants in their objection speculated as to what inadmissible evidence might be forthcoming, primarily focusing on the prospect that Holmes might testify as to the railroad's practice and procedure while Keuper might testify based on limited and, in defendant's view, inadequate criteria that the crossing was unsafe. Extended argument took place out of the presence of the jury in which various theories were advanced and countered. As a result of the extensive possibilities raised, and the lengthy discussion which ensued, the trial court's ruling may not have been perfectly clear to the parties. Plaintiffs contend they were prevented from obtaining the opinion of Holmes. However, the ruling did not foreclose this testimony but only prohibited Holmes from testifying as to the "procedures and policy" of the railroad with which he was not familiar. As to Keuper, the ruling was that he could not voice opinions as to safety measures which were contrary to the duties imposed by law or to the authorities on which he chose to rely. There was no blanket ruling that he could not give his opinion as to the safety of the crossing. Moreover, the plaintiffs, if they were uncertain as to the limitations imposed by the rulings, never inquired about or tested their extent during subsequent examination of the two wit-

nesses. Thus, there is no clearcut basis to conclude that plaintiffs were prevented from introducing evidence of the opinion of the two expert witnesses as to the safety of the crossing on the night in question.

The burden is upon the party alleging error to show it affirmatively by the record. *Campbell v. Powell*, 206 Ga. 768, 770 (3) (58 SE2d 829) (1950); *Smith v. Forrester*, 132 Ga. App. 426 (1) (208 SE2d 199) (1974).

8. Plaintiffs contend it was error to exclude their exhibit consisting of five photographs showing railroad cars with reflectorized material on their sides.

We find no error in excluding the photographs because their admission was contrary to the ruling on the motion for limine which forbade evidence regarding the absence of reflectorized material on the train.

It should also be noted that the photographs were not made a part of the record. Since this is a court for correction of errors of law, our decision must be made upon the record and not upon briefs of counsel. *Belluso v. Sunnyland Foods*, 142 Ga. App. 7 (1) (234 SE2d 821) (1977); *Collins v. State*, 248 Ga. 687, 689 (2) (286 SE2d 8) (1982). See *Smith v. Goerlich's*, 112 Ga. App. 374, 376 (2) (145 SE2d 385) (1965). Moreover, as we understand what they depicted, their relevancy is doubtful at best.

9. The last enumeration asserts error in the trial court's sustaining an objection to closing argument and reprimanding plaintiffs' counsel. The objection by defense counsel was that there was no testimony to support the argument. At that point, plaintiff's counsel declined an opportunity to be heard and was thereupon reprimanded, the court agreeing that the evidence for it was lacking.

The failure to respond can be considered as a waiver regarding the issue. But even if this were not true the sole issue now raised is that there was evidence to sustain the assertion that the railroads were pleading poverty in that they could not afford the necessary warning signals. The evidence to which reference is made concerns testimony by defendant's expert witness that costs affect policy decisions regarding safety measures taken. The testimony addressed general policy considerations concerning traffic safety programs and did not relate specifically to the defendant railroad companies in this case. Thus the testimony did not permit, as a reasonable inference, that the absence of devices at this crossing was based on defendants' excuse that they lacked monetary resources for such devices. Moreover, it was misleading because counsel coupled it with a reference to the governing authority's obligation for costs, as though the "excuse" were a lame one. But what the witness had been talking about was the safety program, not the expenses for which the government would

be responsible.

*Judgment affirmed. Deen, P. J., and Pope, J., concur specially.*

POPE, Judge, concurring specially.

While I must reluctantly concur in the judgment of the majority, I write separately to point out that my concurrence in Division 2 of the majority opinion is in judgment only, rather than an agreement with the rationale expressed therein. Under my reading of the procedural realities of this case, the merits of plaintiff's enumeration of error regarding the charge on comparative negligence are not reached in this case only because during the charge conference plaintiff's counsel expressly agreed that it be given. In fact, the charge now complained of began as a request to charge offered by one of the defendant railroads. The charge as given is the product of certain amendments made at the behest of plaintiff's counsel and explicitly agreed to by him. The giving of this instruction was, thus, at the very least acquiesced in by counsel. See also *Irvin v. Oliver*, 223 Ga. 193 (2) (154 SE2d 217) (1967); *Brown v. Garcia*, 154 Ga. App. 837 (1) (270 SE2d 63) (1980). Because of the foregoing, appellate review is precluded.

Additionally, I find the reference to the opinion in *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395 (306 SE2d 657) (1983), made in obiter dictum of Division 3 is in need of clarification. The evidence of subsequent repairs was held to be admissible only because the door to rebuttal testimony of remedial measures had been opened by defendant's counsel whose question and its answer if allowed to go unrebutted left the jury with an unfair impression. See also *Brooks v. Cellin Mfg. Co.*, 165 Ga. App. 375, 377 (299 SE2d 888) (1983) (dissenting opinion). The Supreme Court's opinion in *Brooks v. Cellin Mfg. Co.*, supra, therefore, stands only for the proposition that although the evidence was of subsequent remedial measures, it was admissible because it was submitted for a different purpose; that is, to rebut testimony previously offered by defendant.

I am authorized to state that Presiding Judge Deen joins in this special concurrence.

DECIDED DECEMBER 4, 1985 —
REHEARING DENIED DECEMBER 20, 1985.

*S. Phillip Brown*, for appellants.

*F. Kennedy Hall, Jesse Copelan, Jr., Carr G. Dodson, George D. Lawrence, Wallace Miller III*, for appellees.